| |
|---|
| **New York State Unified Ct. Sys. v New York State Pub. Employment Relations Bd.** |
| 2024 NY Slip Op 31928(U) |
| June 4, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 161972/2023 |
| Judge: Arlene P. Bluth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. ARLENE P. BLUTH**  PART  14

*Justice*

-------------------------------------------------------------------------------X

NEW YORK STATE UNIFIED COURT SYSTEM,

Petitioner,

- v -

NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS
BOARD, SUFFOLK COUNTY COURT EMPLOYEES
ASSOCIATION, INC.,NEW YORK STATE SUPREME
COURT OFFICERS ASSOCIATION, ILA, LOCAL 2013,
AFL-CIO, NEW YORK STATE COURT OFFICERS
ASSOCIATION, CIVIL SERVICE EMPLOYEES
ASSOCIATION, INC.,LOCAL 1000, AFSCME, AFL-CIO,
COURT OFFICERS BENEVOLENT ASSOCIATION OF
NASSAU COUNTY, ASSOCIATION OF SUPREME COURT
REPORTERS, NINTH JUDICIAL DISTRICT COURT
EMPLOYEES ASSOCIATION, DISTRICT COUNCIL 37,
LOCAL 1070, AFSCME, AFL-CIO, COURT ATTORNEYS
ASSOCIATION OF THE CITY OF NEW YORK, NEW YORK
STATE COURT CLERKS ASSOCIATION, INC.

Respondents.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 161972/2023 |
| MOTION DATE | 05/22/2024 |
| MOTION SEQ. NO. | 001 003 004 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1- 42, 43, 44, 59, 60, 61, 63, 64, 73, 76, 79, 80, 82, 89, 90, 91, 92, 93, 94, 95, 96

were read on this motion to/for                    ARTICLE 78                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 52, 53, 54, 55, 56, 57, 58, 85, 86, 87, 88, 97

were read on this motion to/for                    DISMISSAL                    .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 65, 66, 67, 68, 69, 70, 71, 72, 98

were read on this motion to/for                    DISMISS                    .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 74, 75

were read on this motion to/for                    DISMISS                    .

Motion Sequence Numbers 001, 003, 004 and 005 are consolidated for disposition. The

petition to vacate a determination made by respondent the New York State Public Employment

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC
EMPLOYMENT RELATIONS BOARD ET AL
Motion No.  001 003 004 005**

**Page 1 of 13**

1 of 13

[* 1]

Relations Board is denied.  The motions, (MS003, 004 and 005), by various respondents to dismiss the petition is granted.[1]

**Background**

This proceeding concerns the COVID-19 testing and vaccination policies and the related procedures implemented by petitioner in 2021. These included initial policies requiring testing for those who were not vaccinated, followed by a subsequent policy requiring petitioner's employees to get vaccinated (subject to various exemptions). Ten unions filed improper practice charges against petitioner.  The dispute proceeded before an Administrative Law Judge ("ALJ"), who presided over a hearing before issuing a final determination (NYSCEF Doc. No. 3).  In her decision, the ALJ noted that "the main questions presented here are whether UCS was required to bargain with the charging parties regarding its decisions to require employees in the bargaining units to test and vaccinate for COVID-19, whether it was required to bargain regarding the Policies it used to implement its decisions to mandate testing and vaccine, and whether UCS failed to bargain regarding the impact of the Policies on terms and conditions of employment of the employees" (*id*. at 18).

The ALJ observed that "Generally, an employer is required to bargain with a certified employee representative before implementing a new work rule constituting a change in bargaining unit employees' terms and conditions of employment" (*id*. at 19).  The ALJ found that the testing and vaccine policies were work rules (*id*. at 20).  However, she distinguished between petitioner's ability to issue the testing and vaccine polices and how those policies were implemented (*id*. at 24-26).  Specifically, the ALJ noted that "in deciding to mandate employees

---

[1] Motion sequence 002 sought to join this proceeding for disposition with other pending Article 78 proceedings. The Court denied that motion in NYSCEF Doc. No. 84.

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 2 of 13**

2 of 13

to be vaccinated and tested for COVID-19, I find that UCS did not unnecessarily intrude on protected interests of the employees in the bargaining units, nor did the Policies go beyond what is necessary to further UCS' effort to ensure an accessible forum."

"However, while I find that UCS was not required to bargain over its decisions to require employees in the bargaining units to vaccinate or test for COVID-19, the Policies were implemented using procedures which were the result of many other decisions, decisions which are not themselves a necessary consequence of UCS' decisions to require vaccination or testing" (*id.* at 26). She stressed that "In adopting the Policies, UCS unilaterally implemented extensive procedures that implicate various terms and conditions of employment, including leave time, compensation, discipline, job security, and medical privacy, all of which must be bargained" (*id.*).

The ALJ cited examples of processes for how employees could be considered for religious and medical exemptions and with the specific amounts of compensatory time and leave for getting tested and receiving a vaccination (*id.* at 26-27). The ALJ concluded that "UCS had a duty to negotiate with the charging parties over the chosen procedures used to implement the Policies, to the extent that they implicate terms and conditions of employment" (*id.* at 27). She insisted that:

> "1. Cease and desist from unilaterally imposing procedures that employees must follow in order to be tested or vaccinated for COVID-19;
>
> 2. Make whole bargaining unit employees who lost accrued leave, compensation or employment as a result of the implementation of the Policies, with interest at the maximum legal rate;
>
> 3. Expunge all records of disciplinary action taken against any bargaining unit employee for failing to comply with the procedures used to implement the Policies;
>
> 4. Bargain with DC 37, CAA, NJDCEA, and CCA regarding the impacts, if any, of the Policies;

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 3 of 13**

3 of 13

[* 3]

5. Sign and post the attached notice at all physical and electronic locations customarily used to post communications for bargaining unit employees." (*id*. at 30-31).

Petitioner then filed an exception with respondent the New York State Public Employment Relations Board ("PERB"); other union respondents filed "cross-exceptions" as well. According to the PERB decision, petitioner argues that the ALJ *sua sponte* addressed whether decisional bargaining was required over petitioner's decision to include procedures within the aforementioned COVID-19 polices, and objected to the "make whole" remedy (NYSCEF Doc. No. 18 at 3). PERB noted that no party objected to petitioner's ability to establish the policies without engaging in any bargaining (*id*. at 7).

PERB observed that certain unions (NYSCOA, COBANC and the Association of Supreme Court Reporters with the City of New York) were excluded from the ALJ's decision (*id*. at 8). PERB upheld this decision with respect to NYSCOA and the court reporters as these parties "do not allege a violation based on a demand and refusal to bargain impact and neither of these Charging Parties ever moved to amend their charge to allege such a violation or to conform the pleadings to the evidence" (*id*.). However, PERB found that COBANC's charge did allege a failure to bargain the impact of the aforementioned policies.

With respect to the assertion that the ALJ improperly made a *sua sponte* decision, PERB insisted that "Although none of the Charging Parties used the precise framework adopted by the ALJ, we find that many of the charges gave ample notice that the Charging Party was contesting the lawfulness of the procedures implemented by UCS" (*id*. at 9). "Such was clearly the case in this matter with respect to Charging Parties NYSSCOA, CSEA, COBANC, NJDCEA, DC37, CAA, and CCA" (*id*. at 10).

161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC        Page 4 of 13
EMPLOYMENT RELATIONS BOARD ET AL
Motion No.  001 003 004 005

[* 4]

4 of 13

PERB concluded that "We recognize the unique circumstances here. The COVID-19 pandemic presented unprecedented challenges for society as a whole, including public employers such as UCS seeking to fulfill their statutory and constitutional mandates. However, the fact that a public health emergency existed did not suspend or preempt the obligations of public employers under the Act, especially where, as in this matter, rights under the Act did not interfere with the employer's ability to secure a safe environment, as the employer's ability to restrict in-person access to its facilities and personnel is unchallenged" (*id*. at 11-12).

PERB stated that:

"As such, we agree with the ALJ that UCS had an obligation to bargain over the procedures associated with implementation of the Policies, such as whether paid time off was available for employees testing and/or receiving a vaccination and the process through which employees could apply for religious or medical exemptions prior to implementing the Policies. In terms of the remedy, we find it appropriate to order a make-whole remedy, but not to order reinstatement. The Policies here were enacted in response to an unprecedented public health crisis and in furtherance of UCS' mission. Further, the Policies did not unnecessarily intrude on protected interests of employees in the bargaining units. Bargaining over the procedures associated with the Policies would not have exempted employees from the obligation to be tested and subsequently vaccinated, and there is no showing on the record before us that any negotiable procedures would have led to compliance with the Policies. Our make-whole remedy in the Order below therefore does not require reinstatement of employees separated from service as a result of non-compliance with the Policies. Employees' separation from service does not stem from the failure to bargain procedures, but rather from employees' choice not to comply with UCS' non-mandatorily bargainable decision to test and subsequently to vaccinate. Ordering reinstatement in these circumstances would essentially eviscerate any incentive for employees to comply with the lawfully enacted Policies. We do not limit the make-whole remedy to Charging Parties who specifically requested such a remedy, as UCS urges. Neither our improper practice charge forms nor our Rules require that a charging party enumerate the specific relief sought." (*id*. at 12-13).

In other words, PERB upheld the ALJ's rationale but modified the remedy, finding that petitioner had to:

"1. Cease and desist from unilaterally imposing procedures that employees must follow in order to be tested or vaccinated for COVID-19 for employees in the units represented by NYSSCOA, CSEA, COBANC, NJDCEA, DC 37, CAA, and CCA;

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL
Motion No.  001 003 004 005**

**Page 5 of 13**

5 of 13

2. Make whole bargaining unit employees for any economic losses resulting from UCS' failure to bargain procedures associated with implementation of the Testing Policy and Vaccination Policy, with interest at the maximum legal rate for employees in the units represented by NYSSCOA, CSEA, COBANC, NJDCEA, DC 37, CAA, and CCA;

3. Bargain with DC 37, CAA, NJDCEA, CCA, and COBANC regarding the impacts, if any, of the Policies;

4. Sign and post the attached notice at all physical and electronic locations normally used to post notices to unit employees" (*id*. at 14).

Petitioner then commenced this proceeding to annul PERB's determination.

**The parties' positions**

Petitioner insists that the ALJ's determination was wholly illogical by splitting petitioner's ability to issue the policies from their ability to implement them. Petitioner maintains that the policies and the procedures to implement them are inextricably intertwined. It claims that PERB should not have affirmed this conclusion and that PERB was not permitted to implement a "make whole" remedy that was not requested by the unions.

Petitioner observes that throughout 2021, before the testing policy went into effect, it met with the unions about its implementation. It claims that it provided one hour of paid time off for testing as a result of these meetings. When it later announced the vaccination policy in the summer of 2021, petitioner asserts it met with the unions again. Petitioner admits that on February 15, 2023, it rescinded these policies based on high levels of immunity for COVID-19 in the general population.

In motion sequence 003, PERB seeks to dismiss the petition. It observes that petitioner's discussion about the substantial evidence standard is misplaced as the PERB hearing was only discretionary, not required by law. PERB insists that the only applicable standard here is

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 6 of 13**

6 of 13

whether its decision was arbitrary and capricious. PERB argues that its decision is entitled to deference. It argues that the ALJ did not *sua sponte* raise the issue that petitioner failed to bargain procedures and that petitioner had ample notice of this issue. PERB points out that petitioner pled that its polices and the procedures to implement them are inextricably intertwined and so it had proper notice.

PERB also points out that the improper practice charges from the unions complained about loss of time and accruals, leave for testing and costs associated with testing. Therefore, PERB argues, the charges explicitly mentioned procedures that should have been subject to mandatory bargaining. And according to PERB, this was no surprise to petitioner and so it was properly addressed in the determination.

In motion sequence 004, the Ninth Judicial District Court Employees Association ("NJDCEA") and the Court Attorneys Association of the City of New York ("CAA") seek to dismiss this proceeding and adopt many of the arguments raised by PERB. They insist that they did allege a refusal to bargain in their improper practice charges and therefore PERB's decision should be upheld.

Motion Sequence 005 concerns the motion to dismiss by respondents the New York State Court Clerks Association and the Court Officers Benevolent Association of Nassau County, who also join in PERB's arguments.

The Court also observes that some respondents answered, including the Civil Service Employees Association., Local 1000, ASFCME, AFL-CIO (NYSCEF Doc. No. 59), District Council 37 (NYSCEF Doc. No. 60), the Association of Supreme Court Reporters (NYSCEF Doc. No. 63) and the Suffolk County Court Employees Association, Inc. (NYSCEF Doc. No. 73).

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 7 of 13**

7 of 13

In response to PERB's motion to dismiss, petitioner contends it performed a "herculean effort" to conform with its constitutional mandate to guarantee safe access to the courts during a global health crisis. Petitioner claims that the ALJ's decision is simply illogical as the policies and the procedures are inextricably intertwined and therefore cannot be separated.

**The Proper Standard**

The first issue for this Court is what standard should apply to PERB's determination. PERB insists that only the arbitrary and capricious standard should apply; petitioner argues that the "substantial evidence" standard is also implicated here. CPLR 7803(4) discusses Article 78 proceedings that concern "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence." Under CPLR 7804(g), proceedings involving questions of substantial evidence must be transferred to the Appellate Division.

The Court finds that only the arbitrary and capricious standard applies here. PERB cites to Civil Service Law § 205.5(j) which states that PERB may "hold such hearings and make such inquiries *as it deems necessary* for it properly to carry out its functions and powers" (emphasis added). Under a plain reading of CPLR 7804(g), which provides that the substantial evidence standard (and transfer to the Appellate Division) must occur where the hearing is held "pursuant to a direction by law," this Court finds that an optional hearing does not invoke the substantial evidence standard. The hearing held here was not required by law. Petitioner's reliance on a Third Department opinion that utilized the substantial evidence standard is misplaced as it applied to review of "PERB's determination of a past practice made after a hearing" (*County of*

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 8 of 13**

[* 8]

8 of 13

*Rockland v New York State Pub. Empl. Relations Bd*., 225 AD3d 944, 946, 207 NYS3d 197 [3d Dept 2024]).

The instant dispute does not concern a past practice determination nor did the Third Department's decision address whether or not PERB hearings are directed by law. Plus, PERB points out that because it prevailed on the merits in that case, it could not appeal the purportedly improper standard. Moreover, the cases cited by petitioner for the proposition that the substantial evidence standard applies contain no indication that this issue was contested and PERB claims that the transfers to the appellate divisions are typically unopposed, meaning that the proper standard issue was not litigated.

And, as PERB points out, there are no disputed factual issues here and so there are "no contested issues of substantial evidence to resolve" (*Rubenstein v Metro. Transp. Auth.*, 145 AD3d 453, 454, [1st Dept 2016]). The parties all agree that petitioner imposed both the aforementioned testing and vaccination policies and the subsequent procedures implementing these policies. In this Court's view, there were no material issues decided based upon credibility determinations of the witnesses at the hearing. In other words, this is not a situation in which a hearing officer based her ultimate conclusion on her impressions of witness testimony. Rather, the determinations by the ALJ and PERB were primarily based on their interpretation of the relevant statutory scheme.

Critically, the Court observes that despite the fact that petitioner asserts that substantial evidence applies, petitioner did not request that this case be transferred to the First Department or address the issue of a transfer at all. In fact, petitioner appears to demand a determination on the merits from this Court using, in part, a substantial evidence standard. It is not clear that this

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL Motion No.  001 003 004 005**

**Page 9 of 13**

9 of 13

[* 9]

Court could, even if it wanted to, analyze the instant determination under the substantial evidence standard as that appears to be the province of the Appellate Division.

Because this Court determines that the arbitrary and capricious standard applies, it will assess PERB's determination accordingly.

**PERB's Determination**

"Our scope of review in this context is limited to whether PERB's decision "was affected by an error of law or was arbitrary and capricious or an abuse of discretion. Moreover, as we have recognized, PERB is accorded deference in matters falling within its area of expertise. This includes the resolution of improper practice charges" (*Matter of Kent v Lefkowitz*, 27 NY3d 499, 505, 35 NYS3d 278 [2016]).

The Court grants the motions to dismiss and denies the petition. PERB's decision was rational and logical and the petition does not state a cognizable claim to disturb this determination. In this Court's view, petitioner had adequate notice that certain respondents were complaining about the failure to bargain over the procedures utilized to implement the aforementioned policies. As PERB's decision observed "Specifically, the charges filed by the New York State Supreme Court Officers Association, ILA, Local 2013, AFL-CIO (NYSSCOA), the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO (CSEA), COBANC, NJDCEA, DC 37, CAA, and CCA contested UCS' failure to bargain over subjects such as 'the loss of time and accruals, the costs of surveillance testing,' and excused leave for testing, breaks, costs associated with testing, and the impact of out-of-pocket expenses" (NYSCEF Doc. No. 18 at 10). It was therefore rational for PERB to consider these issues and the determination was not a *sua sponte* decision about issues not raised by the union respondents.

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 10 of 13**

10 of 13

The Court also finds that it was rational for the ALJ and PERB to conclude that the policies and the procedures implementing these policies are not inextricably intertwined. PERB's decision (*id*. n 29) cited numerous examples of cases involving policies that were not subject to bargaining but included procedures that were subject to mandatory bargaining (*see e.g., City of Long Beach v New York State Pub. Empl. Relations Bd.,* 39 NY3d 17, 26, 177 NYS3d 203 [2022] ["although it is undisputed that the City's right to terminate is not a subject of mandatory negotiation, the City must negotiate the procedures necessary to effectuate that right"]). Clearly, there is ample precedent for the fact that although a public employer may possess the right to implement a policy not subject to mandatory negotiation, that does not mean that the procedures can automatically avoid mandatory bargaining.

The procedures at issue here affected the terms and conditions of employment under the Civil Service Law (*id*. at 22 [referencing the Taylor Law]). As PERB noted, petitioner "had an obligation to bargain over the procedures associated with implementation of the Policies, such as whether paid time off was available for employees testing and/or receiving a vaccination and the process through which employees could apply for religious or medical exemptions prior to implementing the Policies" (NYSCEF Doc. No. 18 at 12). Under petitioner's interpretation, it had the authority to implement any procedures it wanted, including whether employees received any paid time off to comply with the policies, without engaging in any bargaining. The ALJ and PERB were entitled to reach a different conclusion.

The Court similarly finds that it was rational for PERB to implement a "make whole" remedy. PERB cited to numerous examples in which it has utilized this remedy in situations involving the failure to engage in mandatory bargaining (*e.g., Town of Walkill v The New York State Public Employment Relations Board*, 2010 WL 6771353 [Sup Ct, Albany County 2010]).

161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC
EMPLOYMENT RELATIONS BOARD ET AL
Motion No.  001 003 004 005

Page 11 of 13

[* 11]

And petitioner did not cite any binding caselaw for the proposition that PERB is prohibited from implementing a make whole remedy in this situation.

**Summary**

The Court recognizes that petitioner was in a difficult position. During the height of a once-in-a-century pandemic, petitioner sought to quickly implement policies to keep the courts open while also ensuring the safety of both its employees and the general public. Those efforts were admirable given the constantly changing environment in which the COVID-19 pandemic progressed, including the rise of numerous highly contagious variants. However, that does not permit this Court to ignore the well-established standards discussed above, which require that PERB's determination must be evaluated under the arbitrary and capricious standard.

That petitioner disagrees with PERB's conclusion is a reason for bringing this proceeding; however, it is not, standing alone, a reason for this Court to disturb PERB's determination. A review of PERB's order reveals it was logical and well-reasoned. PERB rationally concluded that there was fair notice of certain of the union respondents' assertions that there was a failure to bargain over the procedures and it cited a basis upon which it could implement a make whole remedy.

While petitioner contends that the two issues (the policies and the procedures) are inextricably intertwined, that does not make PERB's decision irrational or arbitrary. There are many, many issues concerning the implementation of the procedures that do not necessarily implicate petitioner's ability to issue a policy. For instance, take the testing mandate, which required non-vaccinated employees to get tested for COVID-19. No one contested petitioner's ability to mandate that employees get these tests. But, obviously, the logistics of that testing are

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL
Motion No.  001 003 004 005**

**Page 12 of 13**

12 of 13

separate and apart from the policy itself. Specifically, how much excused leave would an employee get for that test? How would the costs of getting such tests be handled? These issues are not about the policy itself (getting tested); it concerns the terms and conditions of employment and therefore PERB was entitled to find it was subject to bargaining. Likewise, whether someone gets one hour or four hours of paid time off (or no time at all) to get vaccinated is not inextricably intertwined with the requirement to get the vaccine.

Any requests for legal fees are denied and the Court emphasizes that this decision merely denies the relief in the petition. That certain respondents may be seeking affirmative relief in other proceedings is not a part of this decision.

Accordingly, it is hereby

ADJUDGED that the petition is denied and this proceeding is dismissed without costs or disbursements.

| 6/4/2024 | | | | ARLENE P. BLUTH, J.S.C. | | |
|---|---|---|---|---|---|---|
| **DATE** | | | | | | |
| **CHECK ONE:** | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| | | GRANTED | | DENIED | GRANTED IN PART | X OTHER |
| **APPLICATION:** | | SETTLE ORDER | | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**161972/2023   NEW YORK STATE UNIFIED COURT SYSTEM vs. NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD ET AL**
**Motion No.  001 003 004 005**

**Page 13 of 13**

13 of 13

[* 13]